Robert L. Sallander, Esq., (SBN 118352)
  rsallander@gpsllp.com
Helen H. Chen, Esq., (SBN 213150)
  hchen@gpsllp.com
Robert G. Seeds, Esq., (SBN 112026)
  rseeds@gpsllp.com
GREENAN, PEFFER, SALLANDER & LALLY LLP
2000 Crow Canyon Place, Suite 380
San Ramon, California 94583
Telephone:  (925) 866-1000
Facsimile:  (925) 830-8787

Attorneys for Defendant
Thomson International, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PETERSON, SADIE FLODING, COLIN STRUB, CARSON BRENDA, JODY BARRY, TEISCHA BENSON, LYNNETTA KLAM, and LORI DAVIES,<br><br>Plaintiff(s),<br><br>v.<br><br>THOMSON INTERNATIONAL, INCORPORATED, a California corporation; DOES 1-10, INCLUSIVE; And ROE ENTITIES 1-10, INCLUSIVE,<br><br>Defendant(s). | Case No.:  1:22-cv-00701 JLT-CDB<br><br>NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (FRCP 12(1)) AND FOR AMENDMENT TO THE SCHEDULING ORDER UNDER RULE 16 |

Greenan,
Peffer,
Sallander &
Lally LLP

1

1

**TABLE OF CONTENTS**

2
Page

3  TABLE OF AUTHORITIES ................................................................................ 2

4  MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 5

5  INTRODUCTION ............................................................................................... 5

6  NATURE OF THE CASE ................................................................................... 5

7  THE LACK OF SUBJECT MATTER JURISDICTION CANNOT
   BE WAIVED AND IS PROPERLY ADDRESSED BY A MOTION
8  TO DISMISS UNDER RULE 12(1).................................................................... 5

9  ON THIS FACTUAL CHALLENGE, PLAINTIFFS HAVE THE
   BURDEN OF PROVING THE AMOUNT IN CONTROVERSY
10 SATISFIES SUBJECT MATTER JURISDICTION REQUIREMENTS ...................... 7

11 THE STANDARD FOR DECIDING THIS MOTION ................................... 10

12 PLAINTIFFS CANNOT SUSTAIN THEIR BURDEN OF PROOF ON THE
   JURISDICTIONAL AMOUNT........................................................................ 12

13
14          1.  JODY BARRY.................................................................... 13

15          2.  TEISCHA BENSON........................................................... 13

16          3.  LORI DAVIES.................................................................... 14

17          4.  SADIE FLODING............................................................... 15

18          5.  LYNNETTA KLAM............................................................ 16

19          6.  MATTHEW PETERSON................................................... 17

20          7.  COLIN STRUB................................................................... 17

21 CONCLUSION.................................................................................................. 22

22

23

24

25

26

27

28

Greenan,
Peffer,
Sallander &
Lally LLP

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB☐

1

## TABLE OF AUTHORITIES

<u>Page</u>

2

3

*Angelo v. Thomson Int'l Inc.*,
2024 U.S. Dist. LEXIS 76086, *6 – 7 (E.D. Cal. 2024)................................. 8, 9

4

*Arbaugh v. Y & H Corp.*,
546 U.S. 500, 506 (2006) ............................................................... 6

5

6

*Arterburn v. Wal-Mart Stores, Inc.*,
2017 U.S. Dist. LEXIS 15131, *10-11 (W.D. Ky, 2017) ............................ 6

7

*Baker v. Am. Soc'y of Composers, Authors & Publrs.*,
2021 U.S. Dist. LEXIS 246709, *8 (D. Ariz. 2021) ................................. 8

8

9

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
556 U.S. 635, 639, 129 S. Ct. 1862, 173 L. Ed. 2d 843 (2009)...................... 5

10

*Colwell v. Dep't of Health & Hum. Servs.*,
558 F.3d 1112, 1121 (9th Cir. 2009) ................................................ 7

11

12

*Cuevas v. P.R. Ports Auth.*,
2018 U.S. Dist. LEXIS 211115, *9 (D.P.R. 2018) ................................. 12

13

*Dominek v. Equinor Energy L.P.*,
2023 U.S. Dist. LEXIS 94929 *4-6 (D.N.D. 2023)................................. 7

14

15

*Geographic Expeditions, Inc. v. Estate of Lhotka*,
599 F.3d 1102, 1106 (9th Cir. 2010) .............................................. 8, 9

16

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010)..................................................................... 8

17

18

*Howell v. Hamilton Meats*,
52 Cal.4th 541 (2011) ............................................................... 12

19

*James Neff Kramper Family Farm P'ship v IBP, Inc.*,
393 F.3d 828, 834 (8th Cir. 2005) ................................................. 6

20

21

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)..................... 6

22

*Leite v. Crane Co.*,
749 F.3d 1117, 1121 (9th Cir. 2014) .............................................. 9, 10

23

24

*McCue v. United States*,
2023 U.S. Dist. LEXIS 232991, *4 (C.D. Cal. 2023)................................ 7

25

*McNutt v. Gen. Motors Acceptance Corp.*,
298 U.S. 178, 188-89, 56 S. Ct. 780, 80 L. Ed. 1135 (1936).....................7, 8, 9

26

27

*Meridian Sec. Ins. v. Sadowski*,
441 F.3d 536, 540-41 (7th Cir. 2006) ............................................. 9

28

Greenan,
Peffer,
Sallander &
Lally LLP

2

*Murray v. Mars Chocolate N. Am.,*
    2014 U.S. Dist. LEXIS 109233, *5 (D.P.R. 2014). .............................................. 10, 11

*Naffe v. Frey,*
    789 F.3d 1030, 1040 (9th Cir. 2015) ................................................................... 9

*Oregon v. Legal Servs. Corp.,*
    552 F.3d 965, 969 (9th Cir. 2009). ..................................................................... 6

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.,*
    802 F.2d 362, 363 (9th Cir. 1986) ...................................................................... 8

*Pupkar v. Tastaca,*
    999 F. Supp. 644, 645 (D. Md. 1998) ................................................................ 12

*Rodriguez v. Sears,*
    349 F. Supp. 2d 211, 213 (D.P.R. 2004) ........................................................... 11

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035, 1039 (9th Cir. 2004). ................................................................. 7

*San Luis Unit Food Producers v. United States,*
    772 F. Supp. 2d 1210, 1218 (E.D. Cal. 2011),
    aff'd, 709 F.3d 798 (9th Cir. 2013) .................................................................... 7

*Savage v. Glendale Union High Sch.,*
    343 F.3d 1036, 1039 n. 2 (9th Cir.2003) ........................................................... 7

*Thornhill Pub. Co. v. General Tel. & Electronics Corp.,*
    594 F.2d 730, 733 (9th Cir. 1979) ...................................................................... 8

*Tirado-Toro v. Builder's Square,*
    986 F. Supp. 714, 715-716 (D.P.I. 1997) .......................................................... 11

*Tosco Corp. v. Cmtys. for a Better Env't,*
    236 F.3d 495, 499 (9th Cir. 2001) ................................................................... 7, 8

*Turner v. AT&T,*
    2016 U.S. Dist. LEXIS 148382 *2-3 (S.D. Cal. 2016) ...................................... 10

*United States v. State Water Res. Control Bd.,*
    2023 U.S. Dist. LEXIS 153400, *8-9 (E.D. Cal. 2023). .................................. 7, 8

*Valiacicharska v. Tinney,*
    2012 US Dist. LEXIS 12800 (N.D. Cal. 2012) ................................................. 12

*Walker v. Nutribullet, L.L.C.,*
    2018 U.S. Dist. LEXIS 228457, *4 (C.D. Cal. 2018) ......................................... 9

*Wiener v. AXA Equitable Life Ins. Co.,*
    2021 U.S. Dist. LEXIS 243792, *3-4 (W.D.N.C. 2021) ...................................... 6

**Rules and Codes**

FRCP 12...................................................................................................................... 5

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB

Rule 16 ........................................................................................................................... 5, 6

28 USC § 1332 .................................................................................................................. 5

Fed. R. Civ. P. 12(h)(3) ................................................................................................... 6

**Miscellaneous**

5C Wright & Miller, Federal Practice and Procedure § 1367 (3d ed. 2023). ............................. 7

Greenan,
Peffer,
Sallander &
Lally LLP

1       **PLEASE TAKE NOTICE** that defendant Thomson International hereby moves that this

2  case be dismissed for lack of federal subject matter jurisdiction, because the jurisdictional

3  minimum for diversity jurisdiction cannot be satisfied. Furthermore should the Court deem this

4  necessary Thomson asks the Court to amend the pretrial order on the ground that trying this case

5  when subject matter is lacking would be manifestly unjust. This motion is made under the

6  authority of FRCP 12(b)1 and (c), Rule 16, and 28 USC Sec. 1332, and is based on this Notice,

7  the Memorandum of Points and Authorities, the Pretrial Conference Statement, the Declaration

8  of Robert Seeds, and on such other matter as the Court may consider.

9  October 28, 2024                       Greenan, Peffer, Sallander & Lally LLP

10

11                         By: _____ /s/ _____

                               Robert Seeds, counsel for defendant

12           **MEMORANDUM OF POINTS AND AUTHORITIES**

13                     **INTRODUCTION**

14      Plaintiffs filed in Federal court, invoking diversity jurisdiction, alleging the amount in

15 controversy for each plaintiff exceeds $75,000 exclusive of interest and costs. The evidence

16 demonstrates the amount in controversy for each plaintiff does not meet the jurisdictional

17 minimum required by 28 USC § 1332, that the Court lacks subject matter jurisdiction, and the

18 case should be dismissed.

19                   **NATURE OF THE CASE**

20      Plaintiffs allege that Thomson placed onions contaminated with *Salmonella* into the

21 stream of commerce; that each plaintiff suffered nausea, diarrhea, and other symptoms from

22 consuming a contaminated onion; and that each is entitled to recover damages. Thomson denies

23 plaintiffs' claims.

24     **THE LACK OF SUBJECT MATTER JURISDICTION CANNOT BE WAIVED AND IS**

25     **PROPERLY ADDRESSED BY A MOTION TO DISMISS UNDER RULE 12(1)**

26      "Subject matter jurisdiction defines the court's authority to hear a given type of case."

27 *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S. Ct. 1862, 173 L. Ed. 2d 843

28 (2009). Federal courts have limited jurisdiction, and it is presumed that jurisdiction is lacking

Greenan,
Peffer,
Sallander &
Lally LLP

5

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.: 1:22-cv-00701 JLT-CDB☐

1  until the party claiming jurisdiction demonstrates otherwise. *Kokkonen v. Guardian Life Ins. Co.*

2  *of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).

3       The Court has noted that this motion is filed after the deadline for filing dispositive

4  motions, and that Thomson should address application of the Rule 16 "manifest injustice"

5  standard for amending pretrial orders. There are two reasons why this motion should be heard at

6  this time. First, the Court's dispositive motion deadline should not apply to subject matter

7  jurisdiction. Subject matter jurisdiction cannot be waived, and if it appears subject matter

8  jurisdiction is lacking, the court is obligated to consider the issue *sua sponte. James Neff*

9  *Kramper Family Farm P'ship v IBP, Inc.*, 393 F.3d 828, 834 (8th Cir. 2005); see also Fed. R.

10  Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the

11  court must dismiss the action.") Furthermore the Supreme Court has ruled that Rule 12 allows a

12  party to object to subject matter jurisdiction at any time. It held that this issue

13
14
         may be raised by a party, or by a court on its own initiative, at any stage in the
         litigation, even after trial and the entry of judgment. Rule 12(h)(3)
         instructs: "Whenever it appears by suggestion of the parties or otherwise that the
15       court lacks jurisdiction of the subject matter, the court shall dismiss the action."

16       *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *accord: Oregon v. Legal
         Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009).

17       Second, the requirement of subject matter jurisdiction is so basic that it would be a

18  manifest injustice for the Court to proceed if the Court lacks subject matter jurisdiction:

19
         While it is unfortunate that subject-matter jurisdiction was raised so late in this
20       case, the law is clear that courts must address questions of subject-matter
         jurisdiction whenever they arise, even if that is after trial.[Footnote omitted] And,
         should the court find subject-matter jurisdiction is lacking, it must dismiss the
21       action. Failure to follow this basic judicial commandment—that subject-matter
         jurisdiction must be present—would be a manifest injustice, which this Court
22       declines to entertain.

23       *Wiener v. AXA Equitable Life Ins. Co.*, 2021 U.S. Dist. LEXIS 243792, *3-4
         (W.D.N.C. 2021); *accord: Arterburn v. Wal-Mart Stores, Inc.*, 2017 U.S. Dist.
24       LEXIS 15131, *10-11 (W.D. Ky, 2017) (where the Court lacked subject matter
         jurisdiction, it was required to vacate a prior grant of a motion to dismiss because
25       the Court lacked power to enter the order, noting that manifest injustice "would
         result if the case were to proceed to final judgment in this Court only to be
26       overturned for want of subject matter jurisdiction.")

27  It would be manifestly unjust for the Court to try a case that lacked subject matter jurisdiction.

28  Hence, if the Court believes that relief under Rule 16 is necessary for the Court to hear this

6

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB

1  motion, the Court should grant an amendment to the scheduling order so that this manifest
2  injustice can be avoided.

3       Even though the pleadings are closed, defendant can move to dismiss for lack of subject-
4  matter jurisdiction under Rule 12(c). *McCue v. United States*, 2023 U.S. Dist. LEXIS 232991, *4
5  (C.D. Cal. 2023); *San Luis Unit Food Producers v. United States*, 772 F. Supp. 2d 1210, 1218
6  (E.D. Cal. 2011), aff'd, 709 F.3d 798 (9th Cir. 2013); *Dominek v. Equinor Energy L.P.*, 2023
7  U.S. Dist. LEXIS 94929 *4-6 (D.N.D. 2023); See 5C Wright & Miller, Federal Practice and
8  Procedure § 1367 (3d ed. 2023).

9  **ON THIS FACTUAL CHALLENGE, PLAINTIFFS HAVE THE BURDEN OF PROVING
   THE AMOUNT IN CONTROVERSY SATISFIES SUBJECT MATTER JURISDICTION
10                             REQUIREMENTS**

11       There are two different ways to attack subject matter jurisdiction: a "facial attack" and a
12  "factual attack". *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial
13  attack, the challenger asserts the complaint's allegations are themselves insufficient on their face
14  to support federal jurisdiction. *Id*. "If a defendant presents a *facial* challenge to jurisdiction, the
15  Court must presume the truth of the plaintiff's factual allegations 'and draw all reasonable
16  inferences in his favor.'" *United States v. State Water Res. Control Bd*., 2023 U.S. Dist. LEXIS
17  153400, *8-9 (E.D. Cal. 2023). This is not a facial attack.

18       In this motion, Thomson makes factual attack, which disputes the truth of plaintiff's
19  jurisdiction allegations. In a factual attack, the party asserting jurisdiction exists has the burden
20  of proving it by a preponderance of the evidence. The Supreme Court held long ago that "'If the
21  defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff
22  must establish jurisdiction by a preponderance of the evidence.'" *McNutt v. Gen. Motors
23  Acceptance Corp.,* 298 U.S. 178, 188-89, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)).

24       Courts in the Ninth Circuit have long followed this rule. *Colwell v. Dep't of Health &
25  Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (on a facial attack, the plaintiff must "present
26  affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in
27  fact, possesses subject matter jurisdiction"); *Safe Air for Everyone*, *supra*, 373 F.3d at 1039;
28  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003); *Tosco Corp. v.*

Greenan,
Peffer,
Sallander &
Lally LLP

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB☐

1    *Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) overruled on other grounds *Hertz*

2    *Corp. v. Friend*, 559 U.S. 77 (2010) ("When subject matter jurisdiction is challenged under

3    Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order

4    to survive the motion"); *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730,

5    733 (9th Cir. 1979) (on a factual attack on subject matter jurisdiction, "the plaintiff will have the

6    burden of proof that jurisdiction does in fact exist"); *Baker v. Am. Soc'y of Composers, Authors*

7    *& Publrs.*, 2021 U.S. Dist. LEXIS 246709, *8 (D. Ariz. 2021) ("When a defendant raises a

8    factual jurisdictional challenge, the 'plaintiff bears the burden of proving by a preponderance of

9    the evidence that each of the requirements for subject-matter jurisdiction has been met.' *Leite v.*

10   *Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)").

11        This Court has previously agreed. *United States v. State Water Res. Control Bd.*, 2023

12   U.S. Dist. LEXIS 153400, *9 (E.D. Cal. 2023)(on a factual attack on subject matter jurisdiction,

13   "the burden of proof remains with a plaintiff, who has 'an affirmative obligation to support

14   jurisdictional allegations with proof'").

15        When Thomson made a similar motion in *Angelo v. Thomson Int'l Inc.*, 2024 U.S. Dist.

16   LEXIS 76086, *6 – 7 (E.D. Cal. 2024), Magistrate Judge Baker held that plaintiffs facing a

17   factual challenge did not have the burden of proof. The Court should not follow this decision.

18   The case law that Court cited to support this position did not involve a factual attack on subject

19   matter jurisdiction. The Court should have followed *McNutt* and applicable Ninth Circuit

20   authority and impose the burden of proof on the plaintiffs.

21        The Court cited only three opinions to support this holding. One of them is *Pachinger v.*

22   *MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986). There, the defendant did

23   not make a factual attack. The Court did not mention the facial/factual distinction. Instead, it

24   noted that the "amount in controversy is normally determined from the face of the pleadings"

25   and "the sum claimed by the plaintiff controls if the claim is apparently made in good faith".

26   These are the rules governing a facial challenge, and do not govern this motion.

27        The second case the Court cited is *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599

28   F.3d 1102, 1106 (9th Cir. 2010). The defendant there did not make a factual challenge, and the

Greenan,
Peffer,
Sallander &
Lally LLP

8

1   Court noted "Where the plaintiff originally files in federal court, 'the amount in controversy is

2   determined from the face of the pleadings'" and that amount "controls so long as the claim is

3   made in good faith". These are the rules governing a facial, but not a factual, challenge.

4        The third case the Court cited, *Walker v. Nutribullet, L.L.C.*, 2018 U.S. Dist. LEXIS

5   228457, *4 (C.D. Cal. 2018) did involve a factual challenge. It acknowledged that factual and

6   facial challenges are different, but did not acknowledge the authority imposing the burden of

7   proof on a plaintiff facing a factual challenge. Nevertheless, it rejected the defendant's

8   contention that the plaintiff had the burden of proving subject matter jurisdiction, relying on

9   *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015). The *Walker* Court should not have relied on

10   *Naffe* because *Naffe* did not involve a factual challenge. Instead, in *Naffe* the trial court

11   challenged jurisdiction on its own motion, based on the allegations made, and imposed on the

12   plaintiff the burden of proving diversity jurisdiction. *Naffe* does not acknowledge the

13   facial/factual distinction, and does not acknowledge the Supreme Court and Ninth Circuit

14   authority allocating the burden of proof to plaintiff when a defendant makes a factual challenge.

15        *Naffe* does, however, acknowledge that "some cases warrant a more thorough inquiry into

16   the facts underpinning jurisdiction than the legal certainty test permits". *Naffe, supra,* 789 F.3d at

17   1040. One example it provides is:

18        *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 540-41 (7th Cir. 2006) (applying
19   the legal certainty test to answer the ultimate legal question whether the amount in
   controversy requirement is satisfied, but asking the proponent of jurisdiction to
20   establish by a preponderance of the evidence certain facts underlying the claimed
   amount.)

21        *Naffe, supra,* 789 F.3d at 1040.

22   *Meridian* supports Thomson's contention that "a proponent of federal jurisdiction must, if

23   material factual allegations are contested, prove those jurisdictional facts by a preponderance of

24   the evidence." *Meridian, supra*, 441 F.3d at 543. *Walker* should have followed *McNutt* and

25   *Meridian*, not *Naffe*.

26        *Naffe*, and the Court in *Angelo*, both suggest the burden of proof Thomson advocates is

27   confined to a defendant facing a motion to remand after removing a case. That is not true. The

28   Ninth Circuit has explicitly based its rule imposing the burden of proof on a removing *defendant*

on the rule imposing the same burden on a *plaintiff* facing a factual attack on subject matter jurisdiction; in each case the burden of proof is imposed on the *party asserting subject matter jurisdiction*. In *Leite v. Crane Co*., *supra* the Ninth Circuit addressed a plaintiff's motion to remand challenging defendant's removal based on federal subject matter jurisdiction. It began by describing the law governing *defendant's* challenge to a *plaintiff's* claim of subject matter jurisdiction, noting the rules described in this memorandum, including the rule that on a defendant's factual attack, the "plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id* at 1121.

Turning to a plaintiff's motion to remand, *Leite* stated "Challenges to the existence of removal jurisdiction should be resolved within this same framework, given the parallel nature of the inquiry." *Id*. at 1122. Specifically, "As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations, triggering application of the rules discussed above for resolving such challenges." *Id*. Hence, in each situation, the party invoking jurisdiction has the burden of proof. That is why the burden is imposed on a plaintiff who sued asserting Federal jurisdiction and faces a motion to dismiss, and on a defendant who removed asserting Federal jurisdiction and faces a motion to remand.

### THE STANDARD FOR DECIDING THIS MOTION

*Turner v. AT&T*, 2016 U.S. Dist. LEXIS 148382 *2-3 (S.D. Cal. 2016) stated the usual rule that "an action is subject to dismissal if 'it is clear to a legal certainty' that the claim could not sustain a judgment over the minimum amount in controversy." It then restated this rule in different language:

> In other words, although a plaintiff may subjectively believe in good faith that the claim exceeds the minimum amount in controversy, the claim should nevertheless be dismissed if it lacks "objective good faith"—*i.e.*, "if one familiar with the applicable law could not reasonably have concluded that the claim was worth the jurisdictional amount.
>
> *Accord: Murray v. Mars Chocolate N. Am.* 2014 U.S. Dist. LEXIS 109233, *5 (D.P.R. 2014).

In *Murray*, plaintiff bit down on an M&M containing hard plastic and broke her tooth. She required a $3000 surgery which she could not afford, and suffered daily pain as a result.

Greenan,
Peffer,
Sallander &
Lally LLP

1   Furthermore, fearing another broken tooth, she could no longer enjoy her daily bag of M&Ms.

2   On defendant's challenge to diversity jurisdiction, the Court recognized the legal certainty test

3   governs, and in applying it applied the objective test:

4       under an "objective analysis" no reasonable jury would conclude that the constant
        sharp pain and the suffering caused by her inability to enjoy her daily bag of
5       M&M's, would amount to more than the jurisdictional minimum. We conclude
        that plaintiff has failed to meet her burden because viewed objectively the pain
6       and suffering associated with the incident cannot fill the gap between the
        $3,000.00 cost of oral surgery and the $75,000.00 jurisdictional minimum.
7
8       *Id*. at *6 – 7.

9   The Court contrasted the case before it with those where plaintiff "suffered a permanent injury

10  that requires prolonged medical treatment" and therefore satisfied the $75,000 requirement. *Id*.

11  at * 7.[1]

12      In *Tirado-Toro v. Builder's Square*, 986 F. Supp. 714, 715-716 (D.P.I. 1997) plaintiff

13  sustained a cut and received fourteen stitches. An X-ray found nothing wrong. The next day,

14  Plaintiff returned complaining of headaches, and was given a tetanus shot and an ointment. He

15  alleged he suffered great physical and emotional pain because of this accident, but he had no

16  continuing problem requiring medical treatment. The Court found there was no diversity

17  jurisdiction:

18      Though the wound was no doubt physically painful and emotionally distressful,
        this court finds that no reasonable jury could determine that Plaintiff's injury
19      would be justly compensated by $ 75,000. No person familiar with the applicable
        law could objectively view Plaintiff's claim as being worth the jurisdictional
20      minimum. In other words, there is a legal certainty that Plaintiff's claim is really
        for less than the jurisdictional amount.
21
22      *Id* at 716

23      In *Rodriguez v. Sears*, 349 F. Supp. 2d 211, 213 (D.P.R. 2004) plaintiff suffered a broken

24  wrist that required therapy and surgery, but then fully healed without leaving any residual

25  impairment. Applying the legal certainty test the Court found this case could not meet the

26  1. The First Circuit's approach to amount in controversy is quite sensible: "When assessing
    whether a personal injury claim exceeds the amount in controversy, the District of Puerto
27  Rico and the First Circuit have given weight to 1) the existence of broken or fractured bones,
    permanent impairment of bodily functions, scarring, continuing physical pain, and emotional
28  stress and embarrassment and 2) the need for surgery, physical therapy, and the wearing of a
    cast." *Cuevas v. P.R. Ports Auth*., 2018 U.S. Dist. LEXIS 211115, *9 (D.P.R. 2018).

11

1    jurisdictional requirement, noting that the "occurrence that did not result in a permanent injury".

2    *Id*. at 215. In *Pupkar v. Tastaca*, 999 F. Supp. 644, 645 (D. Md. 1998) the Court applied the legal

3    certainty test in finding there was no diversity jurisdiction where plaintiff had $4,208 in medical

4    specials following an auto accident.

5        With this in mind we will now address plaintiffs' claims to see if they can survive this

6    examination.

7    **PLAINTIFFS CANNOT SUSTAIN THEIR BURDEN OF PROOF ON THE
8    JURISDICTIONAL AMOUNT.**

9        Plaintiffs recently described their damages claims in the joint pretrial conference

10   statement. Dkt 82 at 16– 19. That part of the statement is attached hereto. Briefly, every plaintiff

11   except Klam seeks to recover medical specials, in varying amounts.[2] All of them claim varying

12   periods of total or partial disability. None of them has a wage loss claim. Some, but not all, of

13   them claim their *Salmonella* infections caused them to suffer medical conditions such as irritable

14   bowel syndrome ("IBS"). All seek general damages in amounts to be determined by the jury.

15       We will discuss each of their damages claims separately, but before doing that we have a

16   couple of overviews. First, there is one legal principle that applies to some of the plaintiffs'

17   claims for medical specials. Their medical expense records show that in accepting the insurer's

18   payment, the provider in some cases made an "adjustment" measured by the amount by which

19   the billed amount exceeded the amount that the insurer thought appropriate for the service

20   provided. In such a case, the vendor accepted the amount the insurer paid and recorded the

21   difference as an adjustment. Under California law, a tort plaintiff is not entitled to recover the

22   insurance adjustment. *Howell v. Hamilton Meats*, 52 Cal.4th 541 (2011), *Valiacicharska v.*

23   *Tinney*, 2012 US Dist. LEXIS 12800 (N.D. Cal. 2012). Plaintiffs' billing records show that in

24   many cases the medical damages amounts that plaintiffs have asserted in the joint pretrial

25   conference statement include the full billed amount rather than the amount the vendor accepted

26   after the insurance adjustment. When a plaintiff's records show that there were insurance

27   adjustments, we will provide damages numbers that do not include those adjustments.

28

2. Klam resides in Canada, and need not pay for medical care.

Greenan,
Peffer,
Sallander &
Lally LLP

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB

Second, there is the question of how to evaluate general damages claims. One source notes

> As a way to begin figuring out how much to compensate the injured person for pain and suffering, permanent disability, and emotional damages—together called "general damages"—the insurance adjuster will multiply the amount of special damages by about one-and-a-half to three times when the injuries are relatively minor, and up to five (and sometimes more) times when the injuries are particularly painful, serious, or long-lasting.
>
> https://www.alllaw.com/articles/nolo/personal-injury/damages-compensation-formula.html#:~:text=These%20expenses%20are%20referred%20to,multiply%20the%20amount%20of%20special

With this in mind we turn now to the individual plaintiffs' damages claims.

**1. Jody Barry**

Barry claims $11,475 in medical expenses. Her actual expenses are $10,171.20. Seeds dec. para. 3. She became ill around July 12, and was treated then, and then treated again two days later. Dr. Jonathan Ellis[3] has issued a report, Seeds dec. exh. G, stating regarding Barry

1) Records indicate that in July, 2020 the plaintiff was diagnosed with Salmonella Infection from which she recovered completely.

2) In the course of her illness she visited an urgent care facility and emergency room, received hydration and was diagnosed with urinary tract Infection as well as infectious colitis.

3) She recovered without need for antibiotic treatment.

4) Records do not document any residual/persistent problems related to her Salmonella Infection.

*Id.* at 42.

Federal jurisdiction is possible only if she is awarded $64,828.81 as general damages. This will be 6.37 times her medical specials. Given her lack of any long-term problem, she cannot satisfy the amount at issue requirement for diversity jurisdiction.

**2. Teischa Benson**

We do not dispute at this time that her medical expenses claim totals $3,913.19. She claims disability only in July, and general damages. Dr. Ellis's report, opines that

1) The plaintiff acquired a Salmonella infection which resolved.

---

3. The Court might recall that Dr. Ellis testified for Thomson in the *Angelo* trial.

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.: 1:22-cv-00701 JLT-CDB

Greenan,
Peffer,
Sallander &
Lally LLP

2) The degree of her illness was mild

3) Records do not indicate any after-effects from Salmonella infection.

Seeds dec. exh. G at 15,

Federal jurisdiction is possible only if she is awarded $71,086.82 in general damages This amount would be 18.166 times her medical specials. Given her lack of any long-term problem, she cannot satisfy the amount at issue requirement for diversity jurisdiction.

### 3. Lori Davies

Davies claims medical expenses totaling $18,373.66 relating to her original infection. When adjustments are subtracted, her claim is reduced to $12,477.25. Seeds dec. para. 5. Based on this alone, she would have to recover $62,522.76 in general damages to satisfy diversity jurisdiction, an amount 5.01 times her special damages. Unless she has a long term problem resulting from her infection she cannot satisfy the jurisdictional minimum.

She claims she suffers from IBS and SIBO (small intestinal bacterial overgrowth) caused by her infection. Dr. Ellis's report casts substantial doubt on this. He notes that records reflect a diagnosis of SIBO and there is a suggestion she was tested and treated for in August and October 2021. Seeds dec. exh. G at 9. However, he questions this diagnosis:

> I do not find documentation (actual lab report) of the SIBO diagnosis which would be via a hydrogen/methane breath test after administration of Lactulose. Her symptoms as stated are consistent with this diagnosis, however, and this is a reasonable conclusion pending response to treatment. In this clinical setting, the treatment is reasonable, followed by assessment of improvement. I do not find documentation of improvement, which would raise the question as to whether this is the correct diagnosis and warrant breath testing as stated to see if treatment worked. Additionally, if chronic diarrhea is present, a colonoscopy with random biopsies should be performed to exclude microscopic colitis. The plaintiff had colonoscopies in September 2022 and April 2023. Random biopsies were not performed. If she had reported chronic diarrhea to her gastroenterologists, this should have been done. If random biopsies were not performed, a reasonable conclusion would be that she did not voice a complaint of these symptoms in 2022 or 2023.

> *Id.* at 12.

He also noted "There is no evidence of ongoing symptoms of small intestinal bacterial overgrowth (SIBO) or irritable bowel syndrome/diarrhea predominant (lBS-D) in the records after 2021" and "it is reasonable to conclude that her symptoms of SIBO and IBS-D

Greenan,
Peffer,
Sallander &
Lally LLP

resolved no later than 06/01/22." *Id.* at 13. Hence there is substantial doubt about her IBS/SIBO claim. Furthermore, her mast cell activation issue was attributed to her breast implants and improved with their subsequent removal. Seeds dec. para. 6, exh. K. Her May 6, 2021 ER visit was attributed to dizziness and headache. *Id.* at para 7 and exh. L

She seeks future medical expense, but no evidence of the amount is provided. In *Behr v. Redmond*, 193 Cal. App. 4th 517, 534 (2011) the Court reversed an award of future medical expenses where there was no evidence of their cost, as is the case here. The Court should not consider the cost of future medical treatment in determining whether she can satisfy her burden of proof.

### 4. Sadie Floding

We do not currently dispute Floding's claim she incurred $5,813.69 in medical expenses. Therefore, to sustain her burden, she must demonstrate it is possible for her to recover other damages totaling $69,186.31, an amount 11.9 times her medical specials.

She claims to suffer IBS as a result of her infection. Dr. Ellis disagrees:

1) The plaintiff had a history of gastrointestinal symptoms prior to her Salmonella infection in July, 2020.

2) Findings in the records are consistent with recovery from Salmonella infection with no ongoing gastrointestinal symptoms attributable to alleged Salmonella infection.

3) In her deposition the plaintiff states she does not remember experiencing diarrhea prior to 2020, however records indicate that she had alternating diarrhea and constipation which led to gastroenterology evaluation with upper endoscopy and colonoscopy in 2017, at which time her small intestinal biopsies were abnormal, the finding being increased intra-epithelial lymphocytes.

4) The plaintiff stated in her deposition that she has diarrhea daily since her Salmonella Infection. This claim is not reflected in the records provided for review.

**5)** Daily, persistent diarrhea may be caused by many conditions such as inflammatory bowel disease (ulcerative colitis or Crohn's disease), celiac disease, microscopic and collagenous colitis, malabsorption of nutrients due to pancreas disease, and other less common causes.

**6)** Several of the causes of chronic diarrhea are associated with the finding of increased intraepitheliallymphocytes, which were noted in biopsies of the plaintiff's small intestine prior to her Salmonella Infection.

7) If the plaintiff has had ongoing diarrhea, then the conditions referenced in (5) above should have been considered and evaluated, particularly in view of the plaintiffs history of digestive symptoms and abnormal small intestinal biopsy findings which preceded her

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB

Greenan,
Peffer,
Sallander &
Lally LLP

Salmonella infection.

8) The plaintiff declined her doctor's recommendation to have further evaluation of her complaints listed in (4), therefore the cause of diarrhea remains unknown. To attribute her ongoing symptoms to the effects of Salmonella infection is speculation. Evaluation is the appropriate course of action.

9) The applicant is reported to take digestive enzymes/supplements for digestive purposes. Digestive enzymes and supplements are non-specific treatments which may be used to treat many conditions without proven effect and often have in them substances that may contribute to diarrhea, such as magnesium, senna and other plant substances.

10) Without knowledge of the ingredients in the plaintiffs supplements and without full evaluation of her digestive tract her pre-existing condition and/or use of supplements cannot be ruled out as a cause of her persistent diarrhea, and may be a likely cause.

11) To a reasonable medical probability, any benefit she achieves from taking digestive enzyme supplements is unrelated to their effect on any condition that could be related to her Salmonella infection.

12) Without full evaluation of her digestive tract including visualization and tissue sampling of her small and large intestine, it cannot be said with any degree of medical certainty that Salmonella aggravated a pre-existing condition.

Seeds dec. exh. G at 22 – 23.

As a result, her IBS claim should not be considered in deciding this motion.

**5. Lynnetta Klam**

Klam was treated under Canada's national health program, so she has no recoverable

medical expenses. To satisfy her burden of proof she will need to show she can recover

$75,000.01 in other damages.

She also claims she suffered post infectious irritable bowel syndrome, and seeks damages

for future medical expenses. No evidence of the cost of future medical expenses is provided, and

she lives in Canada where she receives medical treatment from the government, so the future

medical expense claim will not help her prove diversity jurisdiction. As for IBS, Dr. Ellis opines:

1) The plaintiff had an acute Salmonella infection in July 2020 which resolved.

2) Colonoscopy performed less than four weeks after her Salmonella infection identified inflammation indicative of resolving inflammation associated with infection. The indication for this procedure being performed so soon after Salmonella infection is not clear.

3) In October of 2020 Dr. Lau documented resolution of colitis symptoms and discontinuation of medication (Mesalamine) prescribed after colonoscopy.

4) Two years after her alleged Salmonella infection she presented with a self-limited

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB

Greenan,
Peffer,
Sallander &
Lally LLP

gastroenteritis. Stool tests excluded Salmonella. She again underwent colonoscopy for which there was no clear indication.

5) To a reasonable medical probability, the 2022 episode of gastroenteritis is unrelated to her Salmonella Infection of two years prior.

6) There is no evidence for ulcerative colitis or other inflammatory bowel disease.

7) There is no documentation of ongoing symptoms or health issues related to Salmonella infection.

8) There is no evidence in the records to support a diagnosis of post-infectious irritable bowel syndrome.

Seeds dec. exh. G page 19.

With no resulting problem and no economic damages, she will need to get $75,000.01 in general damages, based solely on a resolved *Salmonella* infection, to meet the jurisdictional minimum. She will not satisfy her burden of proof.

### 6. Matthew Peterson

Peterson claims only a *Salmonella* infection, and no other medical issues. For his treatment he seeks to recover $7,194.00. However, net of adjustments, his treatment cost $6,158.90. Seeds dec. para. 8. According to Dr. Ellis, his symptoms resolved within 7 – 8 weeks of infection. Seeds dec. exh. G p. 6. Therefore to sustain his burden of proof he must demonstrate it is possible that for short term disability and pain and suffering he can recover $68,841.11 or more, an amount 11.18 times his medical specials. Given his lack of any long-term problem, he will not satisfy the jurisdictional minimum.

### 7. Colin Strub

The Pretrial Conference Statement states that plaintiff Strub seeks medical specials totaling $117,708.54 for his *Salmonella* infection and alleged post infectious irritable bowel syndrome. His document production documents charges, including adjustments, totaling $60,971.77. Seeds dec. exh. O at 1.[4]

His medical expenses for his treatment of his *Salmonella* illness, on June 25, 2020, when reduced by adjustments, total $517.27. Seeds dec. exh. O at 484.

---

[4] In referencing pages in this exhibit we will use the bates numbers, and omit STRUB and any zeros that precede numbers greater than one

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.: 1:22-cv-00701 JLT-CDB

The balance of his medical expense claim requires proof that he suffered from lingering conditions caused by his infection. He claims post-infectious IBS. Dr. Ellis disagrees:

1) The plaintiff was diagnosed with mild Salmonella infection in July, 2020. He had mild gastrointestinal symptoms and recovered.

2) He complained of digestive symptoms in April 2020 which raises the possibility that Salmonella infection was acquired three months or more prior to his symptoms.

3) As stated above under Discussion, non-typhoidal Salmonella may wax and wane for months before resolving. . . .

4) After his Salmonella infection, the plaintiff complained of bloating and erratic bowel habits (predominant constipation with occasional diarrhea) with bloating, difficulty with evacuation and sensation of incomplete evacuation.

5) His symptoms were initially addressed as irritable bowel syndrome, mixed variety (LBS - M) with small intestinal bacterial overgrowth (SIBO).

6) Dysbiosis (disturbed bacterial environment in the intestine) in the form of SIBO is the presumed cause of post-infections IBS.

7) The plaintiff was not found to have evidence for small intestinal bacterial overgrowth (SIBO) on testing.

8) The plaintiff was treated for his IBS with a tricyclic anti-depressant medication (Amitriptyline), which to a reasonable medical probability worsened his constipation.

9) Records indicate that he did not improve with treatment directed at IBS.

10) The plaintiff's symptoms associated with his Salmonella infection were quite mild, therefore he would not be expected to be at high risk for SIBO, dysbiosis or irritable bowel following this infection. The failure to respond to treatment for IBS further suggests that IBS and SIBO were not the correct diagnosis.

11) It appears that after he did not respond to treatment for IBS he entered into a physical therapy program to treat a defecation disorder. The most likely diagnosis is Dyssynergic Defecation, which causes severe difficulties with bowel evacuation, leading to bloating and erratic bowel habits.

12) Dyssynergic defecation has a number of causes . . . . The causes of this condition do not include Salmonella infection.

13) He reported a psychiatric condition, Adjustment Disorder, attributed to stress related to the COVID pandemic.

14) Psychiatric conditions including anxiety, depression, Adjustment Disorder are highly associated with functional digestive disorders including IBS and Defecation Disorders such as Dyssynergic Defecation . . . .

15) While the therapy and exercises initiated by Physical Therapy Specialists may address physical aspects of defecation related to body alignment and positioning,

Greenan, Peffer, Sallander & Lally LLP

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**    Case No.:  1:22-cv-00701 JLT-CDB☐

the plaintiffs symptoms suggest a visceral problem with anorectal dysfunction (the primary cause of Dyssynergic Defecation) which cannot be addressed completely without testing and diagnosis.

16) It is important to note that none of these physical issues related to posture/position or the visceral issues of anorectal dysfunction bear any relation to his Salmonella infection.

17) The plaintiff's defecation symptoms as described in the records warrant proper examination and testing including rectal examination, imaging, balloon expulsion test and anorectal manometry. . . . .

18) Defecation disorders do call for specific established treatments. For Dyssynergic Defecation, biofeedback is recommended.

Seeds dec. exh. G at 34 - 36.

Hence, Strub does not have IBS, and the condition he most likely has is one not caused by *Salmonella*. Instead he has fully recovered from a mild *Salmonella* infection that he might have acquired months before the outbreak. As a result, he should not be awarded any medical expenses other than those for his initial treatment at UC Health. If so he would need to recover $74,482.74 in general damages to meet the jurisdictional minimum. Therefore absent proof of IBS and IBS-related expenses he cannot satisfy the jurisdictional minimum.

Even if he does prove IBS, his claim for medical expenses incurred is substantially inflated, mostly because the treatment he received was for other conditions, but also because of adjustments he cannot recover. He received a number of treatments at UC Health, but after his June 2020 *Salmonella* treatment there, his other treatments were for unrelated conditions:

July 16, 2020 he was treated for heart palpitations, Seeds dec. exh. O at 495, for which his insurer paid $1190.03, *id*. at 486;

On October 12, 2020 he was seen for dysphagia (difficulty swallowing) his preexisting GERD (see Pretrial Conference Statement) and nasal septal deviation, *id*. at 491, for which he paid a $25 copay, *id*. at 485;

On October 29 he received language pathology treatment for which he and his insurer paid $126, *id.* at 488.

The total of these payments is $1,341.03.

He seeks $29,730.00 for treatment at Denver Endoscopy Center during the period 12.16.20-5.5.21. *Id*. at 1. As we will see, the sum of the actual payments to Denver Endoscopy is only $3,803. The dates he was treated there were long after his *Salmonella* infection resolved, so

Greenan,
Peffer,
Sallander &
Lally LLP

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB☐

he has no basis for recovering them. On December 16, 2020 he was seen there for epigastric abdominal pain, dysphagia, and chest pain. *Id*. at 610. The total amount billed for that visit was $21,744 but only $2,268 it was paid, the balance was made up of adjustments. *Id* at 70.  He had a colonoscopy there on May 5, 2021 (a polyp was found, so this procedure was for cancer prevention). The provider billed $7,986 for this, but accepted an adjustment of $6,451, and received only $1,535 for it. *Id* at 70.  The sum of the actual payments to Denver Endoscopy is only $3,803.

He seeks $3,893.52 for treatment at Denver Digestive Health Specialists during the period 10.4.20-5.5.21. *Id*. at 1. Again, this treatment happened after his infection resolved, so there is no liability for them. The following table shows, for 9 visits, the date, purpose, supporting citation, the amount actually paid, and a supporting citation.

//

//

//

| Visit | Date | Purpose | Cite for procedure | Amount paid[5] | Cite for payment |
|---|---|---|---|---|---|
| A | 5-5-2021 | Colonoscopy | 43 | $291.38 | Exh. P line 13 |
| B | 5-5-2021 | Colonoscopy | 43 | $67.24 | Exh. P line 19 |
| C | 3/24/2021 | | | $88.83 | Exh. P line 26 |
| D | 2/16/2021 | Acid Reflux | 48 | $70.49 | Exh. P line 32 |
| E | 2/2/2021 | | | $130.81 | Exh. P line 38 |
| F | 12/16/20 | Upper GI Endoscopy | 59, see 61, 62 | $325.84 | Exh. P line 50 |
| G | 12/16/20 | Upper GI Endoscopy | 59, see -61, 62 | $212.48 | Exh. P line 63 |
| H | 11/30/20 | | | $88.83 | Exh. P line 70 |
| I | 10/14/20 | Test for SIBO | 64-5 | $12.54 | Exh. P line 76 |
| | | | Total paid | $1,288.54 | |

5. The entries in this column and the one to the right are explained in Seeds dec. para 9-12.

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.: 1:22-cv-00701 JLT-CDB

Greenan,
Peffer,
Sallander &
Lally LLP

He seeks $16,302.67 for treatment at St Joseph Hospital and Kaiser Colorado[6] between 7.26.21-2.28.22, exh. O at 1; the entire period he was treated there is after he recovered from his *Salmonella* infection, and plaintiff will not be able to prove that the need for this treatment was caused by that infection.

Moreover, if one examines the medical records associated with the billed services, they show that at least $13,909.89 of these expenses had nothing to do with IBS. The next few paragraphs will explain. On November 11 2021, he was rendered services costing $403.63. Seeds dec. exh. O at 123. These expenses are attributable to a preoperative exam, *id*. at 297, related to GERD and hiatal hernia repair. The Pretrial Conference Statement says he had GERD before his *Salmonella* infection, so Thomson is not liable for this or any treatment for GERD . Dkt 82 at 19. His history for his June 25, 2020 visit for diarrhea includes the hiatal hernia, *id* at 538, 541, so it also preexisted his *Salmonella* infection.

The next day he was seen for a thyroid ultrasound, *id*. at 284 – 5, for imaging of his thoracic and pelvic aorta due to chest or back pain, *id*. at 287 – 8, and for an MRI of his clavical. *Id*. at 294. These services cost $4,901.50. *Id*. at 123.

On November 22, 2021, he was rendered services costing $6,676.40. *Id*. at 124. Records show that he was "referred here for severe GERD and a hiatal hernia", *id* at 638 and had a "Surgical Procedure: Hiatal hernia repair lap transabdominal; magnetic sphincter augmentation device insertion lap; EGO w biopsy of lesion". *id* at 636, 652 – 3 (operative note). Hence this procedure and these charges were for treatment of pre-existing conditions not related to his *Salmonella* infection. In a December 2, 2021 surgical followup, Strub reported that the "reflux he had prior to surgery is gone". *Id* at 266. Hence this procedure related to preexisting GERD.

On December 6, 2021 he was rendered services costing $475.20. *Id* at 124. He was seen for chest pain that he thought might be related to the surgery. *Id* at 239, 263-4.

Between January 19 and February 21, 2022, he was rendered services valued at $1,453.16. *Id* at 124-126. His January 19 visit was for anxiety for which he received

---

6. It is not clear why but his damages recap references the provider as Skyline. Seeds dec. exh. O at 1.

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**   Case No.:  1:22-cv-00701 JLT-CDB

Greenan,
Peffer,
Sallander &
Lally LLP

1  psychotherapy. *Id* at 229. On January 24, 2022 his chief complaint was chest pain, *Id* at 223,

2  which he attributed to the November 22 procedure. *Id* at 225.

3    He was seen for suspected COVID on January 31. *Id* at 217. His chief complaint for his

4  February 7 visit was foot pain, *Id* at 0201, although he did also complain of abdominal pain and

5  constipation. *Id* at 202. A week later his visit diagnosis was nasal obstruction, *Id* at 196,

6  "consistent with . . . what looks like lowgrade bacterial infection/colonization of the anterior

7  septum worse on the patient's left and may be related to retained suture that was removed today".

8  *Id* at 198. Another week later, his chief complaint was anxiety and he was diagnosed with an

9  adjustment disorder. *Id* at 193. The visit summary suggests he was having social issues, not that

10 he was anxious about his health. *Id* at 194.

11   The foregoing demonstrates that the "Skyline" claim is inflated by at least $13,909.88 in

12 expenses attributable to problems having nothing to do with IBS, so even if he proved that he

13 had IBS due to his infection, Skyline part of the claim is worth no more than the balance,

14 $2,392.79.

15   Again, these services occurred after his infection resolved, and he had no continuing

16 problems related to it, so if he proves he was sickened by a Thomson onion, his medical

17 expenses from treatment of that infection total $517.27. Based on this alone he would have to

18 recover general damages totaling $74,482.74 to satisfy the jurisdictional minimum. That amount

19 is 143.99 times his medical specials.

20   The medical evidence does not support his claim for damages due to IBS. Even if it did,

21 if you add to the initial treatment, costing $517.27, $1,288.54 for Denver Digestive Health,

22 $3,803 for Denver Endoscopy, and $2,392.79 for Skyline, he has no more than $8,001.60 in

23 expenses that are not clearly related to his preexisting GERD condition or other unrelated

24 medical situations. As a result he can satisfy the jurisdictional minimum only by recovering more

25 than $66,988.41 in general damages for pain and suffering and temporary disability. That amount

26 would be 8.37 times his maximum medical specials claim.

27         **CONCLUSION**

28   None of these plaintiffs can prove that they suffered anything more than a *Salmonella*

Greenan,
Peffer,
Sallander &
Lally LLP

1  infection that resolved in due course. None of them claims lost wages. Their claims are not the

2  sort of personal injury claims that can satisfy the governing standard for defeating a motion to

3  dismiss based on lack of diversity jurisdiction. The Court should dismiss this suit.

4       Respectfully submitted

5  October 28, 2024                    Greenan, Peffer, Sallander & Lally LLP

6

7  By: ____/s/_____

       Robert Seeds, counsel for defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

**DEFENDANT'S MOTION TO DISMISS RULE 12(b)1 and (c)**    Case No.:  1:22-cv-00701 JLT-CDB

*Salmonella* Newport isolate family tree; and

10. Tests performed by Michelson Laboratories, Inc. for Thomson after August 1, 2020. Thomson recalled all of the onions on August 1, 2020 and had stopped growing, harvesting, or shipping onions. The evidence is not relevant, and is inadmissible under FRE 403.

**(6)     Special Factual Information in Certain Actions.**

In addition to the facts and issues described in (3) through (5), the following special information with respect to the following types of actions shall be specified within either the disputed or undisputed facts sections as appropriate:

(A) The date, place, and general nature of the incident; the particular acts, omissions, or conditions constituting the basis for liability; the particular acts, omissions or conditions constituting the basis of any defense; any statute, ordinance, or regulation violated by either party; the applicability of the doctrine of strict liability or *res ipsa loquitur*.

This case arises out of a 2020 outbreak of *Salmonella* Newport that various public health authorities linked to Defendant's onions. The outbreak sickened individuals in 48 states. Plaintiffs allege that they were exposed to Defendant's contaminated onions and developed *Salmonella* Newport illnesses. Plaintiffs contend that Defendant failed to follow proper industry standards to prevent its products from becoming contaminated. Plaintiffs assert claims of strict products liability, breach of warranty, and negligence, as well as negligence *per se* claims in connection with Thomson's production and sale of onions contaminated with *Salmonella* Newport. Plaintiffs all allege they sustained *Salmonella* by consuming Defendant's contaminated onions. Because this matter involves product liability claims, strict liability applies. As in the *Angelo v. Thomson* case, only the strict liability claim should be submitted to the jury.

(B) Each plaintiff's age; injuries sustained; any prior injury or condition worsened; periods of hospitalization; medical expenses and estimated future medical expenses; the period of total and/or partial disability; annual, monthly, or weekly earnings before the incident; earnings loss to date and estimated diminution of future earnings power; property damage; general damages; punitive damages.

Greenan,
Peffer,
Sallander &
Lally LLP

**JOINT PRETRIAL CONFERENCE STATEMENT**          **CASE NO.: 1:22-CV-00701-JLT-CDB**

**Jody Barry**

Age: 55

Injuries Sustained: *Salmonella* infection, elevated stress and fatigue

Prior Injury or Condition Worsened: None

Medical Expenses and Estimated Futures: Incurred $11,475.40

Period of Total/Partial Disability:  July through September 2020

Earnings Before Incident and Loss of Earnings: Not raising wage loss claim

General Damages: To Be Determined by the Jury

**Teischa Benson**

Age: 31

Injuries Sustained: *Salmonella* infection

Prior Injury or Condition Worsened: None

Medical Expenses and Estimated Futures:  Incurred $3,913.19

Period of Total/Partial Disability: July 2020

Earnings Before Incident and Loss of Earnings: Not raising wage loss claim

General Damages: To Be Determined by the Jury

**Lori Davies**

Age: 52

Injuries Sustained: *Salmonella* infection, Sepsis, hair loss, post infectious irritable bowel syndrome/SIBO, bloating and pain

Prior Injury or Condition Worsened: Worsened polyarthritis (hands, feet, legs), worsened mast cell activation

Medical Expenses and Estimated Futures: Incurred $18,373.66. Future treatment might include visits to specialists who treat IBS and treatments for IBS such as management of associated psychological disorders, antibiotics, opioid agonists/antagonists, bile acid sequestrants, and antagonists of serotonin 5-hydroxytryptamine type 3 receptors, microbiome treatments such as probiotics, prebiotics, synbiotics as well as fecal microbiota transplantation.

Period of Total/Partial Disability: July 2020 to present

Earnings Before Incident and Loss of Earnings: Not raising wage loss claim

General Damages: To Be Determined by the Jury

**Sadie Floding**

Age: 28

Injuries Sustained: *Salmonella* infection, post infectious irritable bowel syndrome

Prior Injury or Condition Worsened: None

Medical Expenses and Estimated Futures:  Incurred $5,813.69. Future treatment might include visits to specialists who treat IBS and treatments for IBS such as management of associated psychological disorders, antibiotics, opioid agonists/antagonists, bile acid sequestrants, and antagonists of serotonin 5-hydroxytryptamine type 3 receptors, microbiome treatments such as probiotics, prebiotics, synbiotics as well as fecal microbiota transplantation.

Period of Total/Partial Disability: July 2020 to present

Earnings Before Incident and Loss of Earnings: Not raising wage loss claim.

General Damages: To Be Determined by the Jury

**Lynnetta Klam**

Age: 62

Injuries Sustained: *Salmonella* infection, post infectious irritable bowel syndrome, bloating and pain for years

Prior Injury or Condition Worsened: None

Medical Expenses and Estimated Futures: Future treatment might include visits to specialists who treat IBS and treatments for IBS such as management of associated psychological disorders, antibiotics, opioid agonists/antagonists, bile acid sequestrants, and antagonists of serotonin 5-hydroxytryptamine type 3 receptors, microbiome treatments such as probiotics, prebiotics, synbiotics as well as fecal microbiota transplantation.

Period of Total/Partial Disability: July 2020 to present

JOINT PRETRIAL CONFERENCE STATEMENT    CASE NO.: 1:22-CV-00701-JLT-CDB

Earnings Before Incident and Loss of Earnings: Not raising wage loss claim.

General Damages: To Be Determined by the Jury

**Matthew Peterson**

Age: 35

Injuries Sustained: *Salmonella* infection

Prior Injury or Condition Worsened: None

Medical Expenses and Estimated Futures: Incurred $7,194.00

Period of Total/Partial Disability: July and August 2020

Earnings Before Incident and Loss of Earnings: Not raising wage loss claim.

General Damages: To Be Determined by the Jury

**Colin Strub**

Age: 45

Injuries Sustained: *Salmonella* infection, post infectious irritable bowel syndrome, bloating and pain for years

Prior Injury or Condition Worsened: History of Gastroesophageal reflux disease (GERD) with esophagitis and Shatzkis ring

Medical Expenses and Estimated Futures: Incurred $117,708.54; will have bills related to treatment of chronic symptoms of post-infectious IBS (such as physical therapy) and assessments with specialists that manage IBS.

Period of Total/Partial Disability: July 2020 to present

Earnings Before Incident and Loss of Earnings: Not raising wage loss claim.

General Damages: To Be Determined by the Jury

**(7) Points of Law.** A statement of the legal theory or theories of recovery or of defense and of any points of law (substantive or procedural) that are or may reasonably be expected to be in controversy, citing the pertinent statutes, ordinances, regulations, cases, and other authorities relied upon. Extended legal argument is not required in the pretrial statement.

Plaintiffs' claims are based on the following four legal theories: strict products liability, breach of warranty, negligence and negligence *per se*. Plaintiffs seek compensatory damages for

19